UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ELLEN GOLDSMITH,

                      Plaintiff,

        -v-

NANCY A. BERRYHILL,
  Acting Commissioner of Social Security,

                      Defendant.

17-CV-483 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Pursuant to 42 U.S.C. § 405(g), Plaintiff Ellen Goldsmith challenges the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. The parties have filed cross-motions for judgment on the pleadings. For the reasons that follow, Plaintiff's motion is granted, and the Commissioner's motion is denied.

**I.    Background**

    Goldsmith is 59 years old. (Dkt. No. 13 ("Tr.") at 35.) From 2004 to 2013, she worked as a data entry clerk for the Legal Aid Society of Westchester. (Tr. at 40, 197.) From 2008 to 2011, she also worked part-time as a waitress. (Tr. at 40, 174, 184.) When working as a clerk, she experienced panic attacks that resulted in extended absences. (Tr. at 57, 330, 333.) After leaving the Legal Aid Society in 2013, she briefly attempted to return to work as a waitress. (Tr. at 39–40.) By 2014, Goldsmith had stopped working entirely because the work and the environment exacerbated her essential tremors, anxiety, and cognitive issues. (Tr. at 250–51, 370.)

    Goldsmith applied for social security benefits in 2014, but her application was denied. (Tr. at 76, 90–92.) She then requested and received a hearing before an administrative law judge

1

("ALJ"). (Tr. at 99–103.) At the hearing, Goldsmith testified about her hand, head, and body tremors, her anxiety, and the frequency with which she experienced panic attacks. (Tr. at 45–59.) She described how the anxiety and tremors restrict her movement and negatively impact her life. (*Id.*) Goldsmith's testimony focused on her difficulties medicating her anxiety and tremors, as the prescribed medications for anxiety often exacerbated the tremors and caused severe fatigue. (Tr. at 45, 56.)

On April 27, 2016, the ALJ concluded that Goldsmith was not eligible for disability benefits. (Tr. at 7–22.) The ALJ determined that Goldsmith suffered from several severe impairments that significantly limited her ability to perform work-related activities. (Tr. at 12.) Still, the ALJ determined that these impairments did not meet or equal the criteria of any impairment listed in the relevant regulations. (Tr. at 13 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ also concluded that Goldsmith had the residual functional capacity to perform "medium" work, including office work and thus was not disabled for the purposes of social security benefits. (Tr. at 15.)

According to the ALJ, "the objective medical evidence of both physical and mental impairments failed to support the alleged severity of [Goldsmith's] symptoms and degree of limitation." (Tr. at 18.) In reaching this conclusion, the ALJ addressed the opinions and credibility of the following medical providers:

*Ms. Gonzalez*: Ms. Lynn Gonzalez is a licensed social worker who treated Goldsmith at the Open Door Family Medical Centers in New York from October 2013 through October 2014. (Tr. at 349–51, 354–55, 381–87, 389–91, 394–95, 407–11, 415–17, 420–25, 428–34, 437–39, 442–43.) On multiple occasions, Ms. Gonzalez noted that Goldsmith was experiencing severe depression and anxiety. (Tr. at 386, 433.) Ms. Gonzalez specifically identified "symptoms of

2

increased tremors and feelings of anxiety, poor sleep, overeating, excessive worry, and irritability." (Tr. at 433; *see also* Tr. at 407–409, 415.) The ALJ did not specifically address the credibility of Ms. Gonzalez's opinion.

*Dr. Grabowitz*: Dr. Ellen Grabowitz is a psychiatrist who saw Goldsmith twice as part of Goldsmith's treatment at Open Door Family Medical Centers. (Tr. at 378–79, 412–13, 487–488.) After the first appointment, Dr. Grabowitz noted that Goldsmith was "depressed, sad, uneasy, [and] angry." (Tr. at 379.) After the second appointment, Dr. Grabowitz noted that Goldsmith experienced "ongoing anxiety and irritability." (Tr. at 412.). Dr. Grabowitz diagnosed Goldsmith with "[m]ood disorder due to known psychological condition." (Tr. at 379, 412.) After their second appointment, Grabowitz reported in a medical source statement that "[d]ue to Ms. Goldsmith's mood disorders, she has difficulty focusing, making it difficult for her to remember, adjust to, and follow job instructions." (Tr. at 488.) Grabowitz also rated Goldsmith's ability to deal with the public, ability to deal with work stress, and ability to maintain attention/concentration as "poor." (Tr. at 487.) The ALJ identified Dr. Grabowitz as a "treating psychiatrist," but gave her medical source statement "little weight" because "it was inconsistent with Dr. Grabowitz's first appointment . . . when the claimant's mental status examination was generally normal other than preoccupation with fears for her future." (Tr. at 16, 19.)

*Dr. Kaci*: Dr. Julia Kaci is a physician who saw Goldsmith once for a neurologic examination. (Tr. at 366.) Dr. Kaci diagnosed Goldsmith with essential tremor, abnormal balance, and meningioma. (Tr. at 368.) She opined that Goldsmith "should avoid heights and uneven surfaces because of abnormal balance" and that Goldsmith has "mild limitations to activities requiring fine handwriting and . . . to activities requiring fine motor activity of hands

3

because of her persistent hand tremor." (*Id*.) The ALJ gave this opinion "substantial weight" because "it was consistent with the medical record and examination findings." (Tr. at 13.)

*Dr. Alpert*: Dr. J. Alpert is a psychiatrist. He did not evaluate Goldsmith in person, but drafted a report based on her disability claims file.[1] (Tr. at 76–86.) Dr. Alpert opined that Goldsmith has "limits in her stress tolerance" but that she "has the mental residual capacity to carry out work procedures." (Tr. at 85.) Dr. Alpert specified that Goldsmith could occasionally lift and carry up to twenty pounds and could frequently lift ten pounds, had abnormal balance, an essential tremor, and "mild limitations to her handwriting and fine motor activity." (Tr. at 81–82.) The ALJ gave Dr. Alpert's opinion "substantial weight" because "it was consistent with the medical record and overall evidence." (Tr. at 20.)

Goldsmith sought review of the ALJ's decision, which the Social Security Administration denied. (Tr. at 1–3, 27–30.) This suit followed. Both parties now move for judgment on the pleadings.

## II. Legal Standard

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1990) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court may not substitute its judgment for the Commissioner's "even if it might justifiably have

---

[1] When evaluating Dr. Alpert's opinion, the ALJ does not mention that Dr. Alpert was asked to review Goldsmith's disability claims file on behalf of the Social Security Administration and never saw Goldsmith in person. (Tr. at 14.)

4

reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

**III. Discussion**

The key issue in this appeal is the treating physician rule. *See Kessler v. Colvin*, No. 14 Civ. 8201, 2015 WL 6473011, at *4 (S.D.N.Y. Oct. 27, 2015). That rule mandates that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). Because treating physicians offer a "unique perspective [on] the medical evidence" that cannot otherwise be obtained from the record, their opinions are entitled to a heightened level of deference. 20 C.F.R. § 404.1527(c)(2). Therefore, "in order to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia:* (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see also Burgess*, 537 F.3d at 129.

Here, the ALJ assigned little weight to the opinion of Dr. Grabowitz, whom the ALJ described as Goldsmith's "treating psychiatrist." (Tr. at 16.) In contrast, the ALJ assigned "substantial weight" to the opinions of Dr. Kaci, who had examined Goldsmith only once, and of Dr. Alpert, who did not examine Goldsmith in person. (Tr. at 13, 20.) The Court must examine whether the ALJ sufficiently justified her decisions (1) to give little weight to the opinions of

5

Goldsmith's treating psychiatrist, and (2) to afford great weight to the one-time consultative physicians.

The first question is whether Dr. Grabowitz qualifies as a treating physician. As a threshold matter, the treating physician rule may apply to medical opinions when rendered by a "physician, psychologist, or other acceptable medical source." *See Knight v. Astrue*, 32 F. Supp. 3d 210, 221 (N.D.N.Y. 2012) (citing 20 C.F.R. §§ 404.1502, 404.1513(a)). Because she is a licensed psychiatrist, Dr. Grabowitz's opinions are those of an "acceptable medical source." *Id.*

To qualify as a treating physician, Dr. Grabowitz must also have had an ongoing treatment relationship with the claimant. An ALJ "may consider an acceptable medical source who has treated or evaluated [the claimant] only a few times or only after long intervals (e.g., twice a year) to be [an applicant's] treating source if the nature and frequency of the treatment or evaluation is typical for [the applicant's] condition(s)." 20 C.F.R. § 404.1527(a)(2). Here, Dr. Grabowitz treated Goldsmith twice in the summer and fall of 2014, satisfying the minimum threshold set out in 20 C.F.R. § 404.1527. (Tr. at 378–79, 412–13, 487–488.) The Court sees no reason to depart from the ALJ's own determination that Dr. Grabowitz qualifies as a "treating psychiatrist." (Tr. at 16.)

Having concluded that Dr. Grabowitz qualifies as a treating physician, the Court considers whether the ALJ sufficiently justified her decision to accord Dr. Grabotiz's opinion limited weight. "When a treating physician's opinion is not afforded controlling weight, the ALJ must comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 183 (E.D.N.Y. 2011) (alterations in original) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). Here, the ALJ explained that she afforded little weight to Dr. Grabowitz's medical source statement

because "it was inconsistent with Dr. Grabowitz'[s] first appointment with [Goldsmith]." (Tr. at 19.) Specifically, the ALJ understood Dr. Grabowitz's first assessment to have found that Goldsmith's "mental status was generally normal other than preoccupation with fears of her future," which contrasted with her later determination that Goldsmith's "ability to deal with the public, deal with work stresses, maintain concentration and attention, and behave in an emotionally stable manner were poor." (Tr. at 19.)

The ALJ's characterization of Dr. Grabowitz's assessments of Goldsmith as "inconsistent" is inaccurate. Both of Dr. Grabowitz's assessments concluded with identical findings of "mood disorder due to known physiological condition." (Tr. at 379, 412.) And, consistent with her second examination, Dr. Grabowitz's findings in the initial assessment also described Goldsmith as "depressed, sad, uneasy, [and] angry." (*Id.*) The ALJ's summary determination that Dr. Grabowitz's different assessments of Goldsmith were "inconsistent" falls short of the Second Circuit's directive that an "ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (alteration in original) (quoting *Halloran*, 362 F.3d at 33) (alteration in original); *see also Selian*, 708 F.3d at 418 ("The ALJ erred in its treatment of [treating physician's] opinion . . . [because] she misconstrued the record."). This "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Aronis v. Barnhart*, No. 02 Civ. 7660, 2003 WL 22953167, at *5 (S.D.N.Y. Dec. 15, 2003) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

Furthermore, Dr. Grabowitz relied extensively on the assessments of Goldsmith's social worker, Ms. Gonzalez, who met with Goldsmith more than ten times in 2014. (Tr. at 378–79, 487–88.) Although social workers are not "acceptable medical source[s]" as defined in 20

7

C.F.R. § 404.1513(a), "it is possible for the opinion of a non-acceptable medical source with a particularly lengthy treating relationship with the claimant to be entitled to greater weight than an 'acceptable medical source' . . . who has rarely had contact with the claimant." *Hernandez*, 814 F. Supp. 2d at 183 (E.D.N.Y. 2011). Applying that principle here, Ms. Gonzalez's opinion was also independently entitled to meaningful weight given her "particularly lengthy treating relationship with" Goldsmith. *See Hernandez*, 814 F. Supp. 2d at 183; *see also Allen v. Astrue*, No. 05 Civ. 0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar. 10, 2008) (remanding because the ALJ did not evaluate a treating therapist's opinion). Here, the ALJ failed to address at any point in her opinion the weight she gave to Ms. Gonzalez's opinion.

The flip side of this problem is the great weight the ALJ afforded to the two consultative physicians. The opinions of consulting doctors who have not performed their own examinations "are to be treated as opinion evidence pertinent to the nature and severity of the claimant's medical condition. They are not to be relied upon, however, for the ultimate determination of disability." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 427 (S.D.N.Y. 2010). The Second Circuit has also warned that "ALJs should not rely heavily on the findings of consultative physicians after only a single examination." *Selian*, 708 F.3d at 419. Here, the ALJ assigned "substantial weight" to the opinions of two consultative physicians: (1) Dr. Kaci, who examined Goldsmith only once, and (2) Dr. Alpert, who never examined Goldsmith in person. (Tr. at 13, 20.) It is particularly important that the ALJ give the opinions of consulting physicians limited weight "when a claimant . . . has some days [that] are better than others." *Kessler*, 2015 WL 6473011, at *4 (alteration in original). Given Goldsmith's testimony that her essential tremor and anxiety vary from day to day, these one-time consultative opinions should have been weighed with caution. (Tr. at 47.) The ALJ inverted the requirement that such

opinions "are not be relied upon" when determining the record of disability when she assigned substantial weight to these consultative opinions in construing Goldsmith's record of disability, while at the same time relying upon her assessment of the record of disability in assigning substantial weight to those opinions in the first place. *Correale-Englehart*, 687 F. Supp. 2d at 427.

In sum, the ALJ did not give sufficient reasons for discounting treating physician Dr. Grabowitz's opinion relative to the substantial weight given to the opinions of one-time consultative physicians. This is a ground for remand, but the Court does not now hold that Goldsmith is disabled or that she is entitled to benefits. The Court holds only that the case should be remanded to the Commissioner for further proceedings, according proper weight to the various medical opinions of Goldsmith's doctors.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED, and the Commissioner's motion for judgment on the pleadings is DENIED. Pursuant to 42 U.S.C. § 405(g), the case is remanded to the Commissioner for further proceedings consistent with this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 18 and 20 and to close this case.

SO ORDERED.

Dated: September 11, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge